IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 09-22617-Civ-Graham/Torres

FDIC, as Receiver for BANKFIRST,
a South Dakota state bank,

      Plaintiff,

vs.

SAVOY HOTEL PARTNERS, LLC,
a Florida limited liability company;
ABRAHAM I. WERJUKA, an individual;
and MONARCH HOTELS AND RESORTS,
INC., a Florida corporation, SLO FUNDING,
LLC, a Delaware limited liability
company,

      Defendants.
_____/

SAVOY HOTEL PARTNERS, LLC,
a Florida limited liability company,

      Counter-Plaintiff,

v.

FDIC, as Receiver for BANKFIRST,
a South Dakota state bank;
MARSHALL BANKFIRST CORP.,
a registered bank holding company;
THE MARSHALL GROUP, a Delaware
corporation; and MARSHALL FINANCIAL
GROUP, LLC a Delaware limited liability
company,

      Counter-Defendants.
_____/

**JOINT STATUS REPORT**

Pursuant to the Court's November 17, 2009 Notice of Telephonic Status Conference,

[D.E. 45] the FDIC, as Receiver for BankFirst, a South Dakota state bank (the "FDIC-R"), Beal

Bank Nevada ("BBN"), Savoy Hotel Partners, L.L.C. ("SHP"), Abraham I. Werjuka, and Marshall BankFirst Corp., The Marshall Group, and Marshall Financial Group, LLC (collectively, the "Marshall Counter-Defendants") hereby file this Joint Status Report as follows:

1. *A plain statement of the nature of the claim and any counterclaim, cross-claim, or third-party claim, including the amount of damages claimed and any other relief sought.*

This action arises out of a $39,500,000.00 loan from BankFirst to SHP to pay-off existing financing and for certain pre-development work related to the Savoy Hotel in Miami Beach, Florida (the "Loan"). The Loan is comprised of a two promissory notes: an Amended and Restated Promissory Note A ("Note A") in the original principal amount of $34,850,000.00 and a Promissory Note B ("Note B") in the original principal amount of $4,650,000.00. The Loan was secured by, among other things, a mortgage on the subject hotel (the "Savoy Hotel"), surrounding land, and a nearby additional parcel, as well as an assignment of rents and receipt in favor of BankFirst. Abraham I. Werjuka executed a Personal Guaranty limited to $20 million.

The term of the Loan was for one year, with a maturity date of May 11, 2007 ("Maturity Date"). It was contemplated that SHP would repay the Loan with proceeds of a construction loan, which would provide funds, along with additional borrower equity, to repay BankFirst and construct the project. Under Section 2.06 of the Loan Agreement, SHP was provided with the option to extend the Loan's Maturity Date for one additional six (6) month period provided no default had occurred (the "Extension Option"). Upon proper written notice, the terms of the Extension Option included (i) the payment of an extension fee of 0.5% of the then outstanding principal Loan balance; and (ii) an additional deposit into the Interest Reserve sufficient to cover the extended Loan period.

The Loan is what is commonly known as a "participation loan," wherein an interest in the Loan and the debt evidenced there under was sold by BankFirst to approximately thirty-five various participant banks in various amounts ranging from as little as $100,000 to $7 million (hereafter, collectively referred to as the "Loan Participants"). "Participation Agreements" govern the relationship between BankFirst and the Loan Participants. BankFirst retained an interest in loan, although the amount and duration of the amount held is disputed by SHP and Werjuka.

SHP did not pay the Loan at the stated maturity date, and BankFirst initiated this action to foreclose the mortgage on the subject collateral in Miami-Dade Circuit Court on or about June 27, 2007. At present, Plaintiffs claim SHP owes in excess of $46 million in principal, late fees, and interest (not including attorneys' fees and recoverable costs).

On July 17, 2009, the State of South Dakota, Department of Revenue and Regulation, Division of Banking declared BankFirst insolvent and appointed the FDIC as its Receiver. On that same date, July 17, 2009, the FDIC accepted the appointment as Receiver ("FDIC-R"). On September 2, 2009, the FDIC-R was substituted as a party in interest in the state court action, in the place and stead of BankFirst. That same day, the FDIC-R removed this case from Miami-Dade Circuit Court to the instant court pursuant to 12 U.S.C. § 1819(b)(2)(B).

On July 24, 2009, the FDIC-R transferred all right, title and interest in and to Note A and the related loan documents, including the mortgage that secures Note A, to BBN. By virtue of a transfer from the FDIC-R, BBN is now the holder of Note A. BBN did not acquire Note B and the FDIC-R remains the owner and holder of Note B.

In defense of foreclosure, SHP and Werjuka have denied liability under the Note and Mortgage. SHP has asserted counterclaims against BankFirst, as well as Marshall BankFirst

Corp., The Marshall Group and Marshall Financial Group, LLC (the "Marshall Counter-Defendants") for violations of Florida's Civil Remedies For Criminal Practices Act, Fla. Stat. §772.101 *et seq*. (hereafter, "Florida Civil RICO") (Counts I & II), as well as several Florida common law claims for fraud in the inducement (Count III), fraud (Counts IV & V), breach of contract (Count VI), breach of the implied covenant of good faith and fair dealing (Count VII), tortious interference (Count VIII), civil conspiracy (Count IX), and breach of fiduciary duty (Count X).

      The counterclaims allege that BankFirst and the Marshall Entities, along with its network of brokers and appraisers, generated risk-free opportunities to itself and others by making misrepresentations to get potential borrowers to agree to inappropriate loans.  SHP alleges, for instance, the Bank would misrepresent that it could proceed with loans without required documentation, in order to participate those loans – in ostensible compliance with banking laws – by generating (without the knowledge of the borrower) false financial information and appraisals that inflated the financial wherewithal and experience of the developer, the business condition and potential of the subject property, and the value of the collateral.  SHP further alleges that the Bank and the Marshall Entities would then participate the loans and retain little or no interest in the debt while garnering fees for originating and participating it.  In this way, SHP contends, BankFirst and the Marshall Entities passed the downside risk to the participants and borrowers, and ultimately to the Federal Reserve – now the receiver herein –, which insured such loans based on the misrepresentation that they complied with federal requirements.

      Moreover, SHP contends that the terms of extending the Loan at maturity changed in response to BankFirst's need to "paper its file."  SHP believes, that due to intensive Federal Reserve scrutiny of BankFirst's loan origination process that began in early 2007, and which

resulted in a consent decree restricting BankFirst's ability to make new loans or refinance and extend existing loan (the "Consent Deree"), BankFirst attempted to "modify" the Loan's terms, particularly the terms for extension, through a side letter that was not executed by SHP's principal – indeed it was never sent to him –, was not executed by an executive of BankFirst, not vetted or approved by the Loan's participants and the terms of which were never performed by BankFirst. BankFirst used SHP's alleged failure to perform its obligations thereunder as a basis to deny extension of the Loan and improperly foreclosure in violation of the Loan Agreement. SHP and Werjuka contend that on June 5, 2007, BankFirst withdrew $2,556,423.54 from an account at BankFirst owned by Mr. Werjuka. Additionally, SHP and Werjuka allege several affirmative defenses, which essentially mirror the common law counterclaims.

The FDIC-R has denied the allegations of SHP's counterclaims, including, but not limited to, any contention that BankFirst manufactured false financial information of the borrower or inflated the value of the property. It is further denied that a "Consent Decree" with the Federal Reserve prohibited BankFirst from extending or refinancing the Loan. In addition, the FDIC-R has asserted numerous affirmative defenses. SHP's common law counterclaims, including its claims for fraudulent inducement, fraud, breach of contract, breach of the implied duty of good faith and fair dealing, civil conspiracy, and breach of fiduciary duty (Counts III through X) are based in large part on allegations that BankFirst made certain oral representations (many of which are alleged to have occurred prior to execution of the loan documents) that it would extend and/or refinance the Loan at maturity and/or cooperate with SHP in having a third-party pay off the Loan. Beyond being factually unsupportable, the FDIC-R believes such allegations are barred as a matter of law by, among other defenses, certain common law and statutory defenses that are uniquely within the special powers accorded to the FDIC to preserve

receivership assets and to permit effective liquidation of a failed bank, including the federal common law "*D'Oench, Duhme* doctrine," enunciated by the United States Supreme Court in *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.,* 315 US 447 (1942), which precludes a party from asserting claims or defenses against the FDIC based upon any "facts" outside the four corners of a recorded document in the bank's files and 12 U.S.C. § 1823(e), which provides a statutory analogue to the common law *D'Oench, Duhme* doctrine, barring any claim or defense against the FDIC based upon an unwritten agreement.  The FDIC-R also believes that SHP's claims for violations of Florida Civil RICO (Counts I & II) are barred as a matter of law by the common law *D'Oench, Duhme* doctrine, 12 U.S.C. § 1823(e), and 12 U.S.C. § 1823(d)(9).

   BBN believes that it, as assignee of Note A from the FDIC-R, is also entitled as a matter of law to assert certain defenses available to the FDIC-R, including *D'Oench Duhme* doctrine, which defenses would bar some or all of the defenses raised by the defendants to enforcement of Note A.  BBN also believes that it may assert the judicially-recognized federal holder-in-due course ("FHIDC") defense, which bars debtors from asserting personal defenses against the FDIC and its assignees in connection with loan obligations that are the subject of purchase and assumption agreements.

   SHP and Werjuka deny that the FDIC-R's and BBN's purported defenses, including their *D'Oench* defenses, are applicable to the facts as alleged in their defenses or SHP's Counterclaim, especially SHP's breach of contract claims.  Moreover, SHP contends that *D'Oench* does not apply to the Counterclaims against the Marshall Counter-Defendants, who were not subject to the take over by the South Dakota Division of Banking and the FDIC.  The Marshall Counter-Defendants deny any liability to SHP and have asserted their own affirmative defenses.

> **2.    *A brief summary of facts which are uncontested or which can be stipulated to without discovery.***

On or about May 11, 2006, BankFirst and SHP entered into a Term Loan Agreement, which evidenced the terms of a loan made by BankFirst in the original principal amount of $39,500,000.00 (the "Loan").  On or about May 11, 2006, SHP executed and delivered to BankFirst an Amended and Restated Promissory Note A in the original principal amount of $34,850,000.00 (the "Note A"), and a Promissory Note B in the original principal amount of $4,650,000.00 (the "Note B").  BankFirst participated the Loan out to approximately 37 banks across the country.

On or about May 11, 2006, to secure the obligations under the Loan Agreement and Note A and Note B, SHP executed and delivered to BankFirst the following documents on or about on or about May 11, 2006: (i) an Amended and Restated Mortgage, Assignment of Rents and Leases, Security Agreement and Fixture Filing, which was recorded at O.R. Book 24525, page 1828 of the Public Records of Miami-Dade County, Florida (the "Mortgage"); (ii) an Assignment of Leases and Rents which was recorded at O. R. Book 24525, Page 1877, of the Public Records of Miami-Dade County, Florida; (iii) a Collateral Assignment of Management Contract; (iv) a Financing Statement filed with the Florida Secretary of State at File No. 200602657863 and a separate Financing Statement recorded at O.R. Book 26525, Page 1888 of the Public Records of Miami-Dade County, Florida (collectively, the "UCCs").

On or about May 11, 2006, Abraham I. Werjuka executed and delivered to the Lender a Guaranty (the "Guaranty").

On July 17, 2009, the State of South Dakota, Department of Revenue and Regulation, Division of Banking declared BankFirst insolvent and appointed the FDIC as its Receiver.  On that same date, July 17, 2009, the FDIC accepted the appointment as Receiver ("FDIC-R").

7

3.     *A brief summary of the issues as presently known.*

**FDIC-R:**

Whether the FDIC-R is entitled to foreclose the Mortgage on the Property.

Whether SHP breached Note A and/or Note B.

Whether Werjuka breached the Guaranty.

The amounts owed by SHP and Werjuka on the Mortgage, Note A, Note B, and Guaranty.

**BBN:**  BBN concurs with the FDIC-R's summary of issues and adds as an additional issue:

Whether BBN is entitled to foreclose the Mortgage on the Property.

**SHP and Werjuka:**

Whether the Loan Agreement and Guaranty are valid and binding.

Whether BankFirst, or by extension, BBN has a valid security interest in the property.

Is rescission appropriate, and if so what, if any, obligation SHP has to repay monies advanced by BankFirst and the participant banks.

Whether SHP's extension of the Loan was valid.

Whether the foreclosure was improperly commenced.

Did BankFirst breach the Loan Agreement when it failed to secure the required financial documentation for the borrower and guarantor.

Whether BankFirst's withdrawal $2,556,423.54 from an account at BankFirst owned by Mr. Werjuka was appropriate and the legal effect.

8

4.    *A summary of any pending motions.*

BankFirst's Motion to Compel Deposition Savoy Hotel Partners Corporate Representative Regarding its Florida Civil RICO Counterclaims filed on or about April 7, 2009

SHP's Motion to Compel Production of Documents by BankFirst filed on April 15, 2009

SHP's Exceptions to General Magistrate's May 20. 2009 Report and Recommendation on BankFirst's Motion to Compel SHP's Corporate Representative Regarding its Florida RICO Counterclaims filed on or about June 1, 2009

BankFirst Amended Motion for Appointment of Receiver or Enforcement of Rents and/or Sequestration of Revenues and Accounts Receivables filed on or about June 2, 2009

BankFirst's Exceptions to General Magistrate's May 28, 2009 Report and Recommendation on SHP's Production of RICO-Related Discovery filed on or about June 8, 2009

SHP's Exceptions to General Magistrate's May 28, 2009 Report and Recommendation on SHP's Production of RICO-Related Discovery filed on or about June 8, 2009

Fairwinds Credit Union's Motion to Intervene filed on or about June 25, 2009

The FDIC-R's Motion for Enlargement of Stay filed on or about October 15, 2009

SHP intends to move for relief from the State Court's January 13, 2009 Order striking its request for jury trial. Additionally, SHP intends on seeking leave to add additional individuals, officers, and employees of the Marshall Counter-Defendants as parties to its Counterclaims.

5.    *The progress of discovery in the case, and the approximate time at which the case will be ready for trial and/or final pretrial conference.*

**FDIC-R:** As this matter has been pending for more than two years, significant discovery has already been completed in this matter, including the production of thousands of pages of documents, and dozens of depositions of party witnesses and third-party witnesses. Pending discovery that needs to be completed by the FDIC-R is minimal and includes the deposition of SHP's corporate representative regarding its Florida RICO claims, and the deposition of Defendants' expert witnesses, if any.

AM_174321.1

The FDIC-R has moved for an enlargement of the previously requested mandatory stay to allow for the exhaustion of the administrative claims process. 12 U.S.C. §§ 1821(d)(3)-(13) provides for a mandatory administrative procedure for the determination of claims against a failed financial institution, requiring any claimant to exhaust the administrative claims procedures set forth therein as a condition precedent to the pursuit of any claims against FDIC-R. Pursuant to 12 U.S.C. § 1821(d)(5), the FDIC-R has a 180-day statutory period to determine whether to allow or disallow any claims. To the extent SHP's claims are disallowed, the FDIC-R anticipates the parties being prepared for trial six months after expiration of the claims process or by October 2010 trial calendar. The FDIC-R requests a dispositive motions deadline be set immediately following the expiration of the administrative claims process.

**BBN:** BBN was not a litigant in the state court proceedings and did not participate in the pre-trial discovery. If BBN has access to the state court pre-trial discovery, it concurs that additional discovery may be minimal. If BBN does not have access to the state court pre-trial discovery, it may need to take more extensive discovery.

With regard to the FDIC-R's motion for enlargement of stay, BBN has opposed the motion on the ground that it should be allowed to pursue its claims to enforce Note A and the related loan documents since those claims are not subject to the administrative claims process.

**SHP and Werjuka:** While significant discovery has been taken, no discovery has been taken on SHP's RICO claims pending resolution of BankFirst and the Marshall Counter-Defendants exception to the General Magistrate's order concerning RICO discovery.

Moreover, there are depositions outstanding. Among other things, SHP and Werjuka have not yet completed the deposition of BankFirst's corporate representative, Michael Hayes. Mr. Hayes sat for one day, and at that time answered "I don't know" or some similar formulation

of the same sentiment more than 190 times in response to questions. At the time, counsel for BankFirst and the Marshall Entities agreed that Mr. Hayes would need to sit for at least one additional day of testimony. Similarly, despite repeated request, the Marshall Counter-Defendants, also represented by Foley & Lardner, failed to name a corporate representative. The parties have not completed the deposition of Gary Cohen, a central witness who signed the document BankFirst claimed as the basis for foreclosure. There are numerous other witnesses who were noticed and/or subpoenaed prior the FDIC-R's removal. Among others, SHP subpoenaed Dennis Mathieson the CEO of Marshall BankFirst, Amber Shimpa the Marshall/BankFirst analyst at the center of the decision to originate the loan in the first instance, Perry Levin one of two primary BankFirst and Marshall Counter-Defendant brokers in South Florida, and James Lund previously employed by BankFirst and the Marshall Counter-Defendants.

For the reasons set forth above, a dispositive motion schedule after the expiration of the administrative claims process is premature at this time. Even if BBN and the FDIC are not subject to any Counterclaims or Affirmative Defenses, which SHP denies, the Marshall Counter-Defendants clearly are. For reasons of judicial economy, it makes little sense to proceed to summary judgment while depositions are proceeding with respect to the Marshall Counter-Defendants. Moreover, notwithstanding *D'Oench*, the FDIC-R and BBN, at minimum, are still subject to SHP's contract claims which undermine the basis for the foreclosure and cannot proceed to dispositive motions until the completion of fact discovery.

After final determination of the Exceptions concerning RICO discovery, SHP contemplates that, with the cooperation of opposing counsel, it can complete fact discovery

11

within six months and be ready for trial within nine months of the lifting of the FDIC's mandatory stay.

> 6. *The projected time necessary for trial, and a statement of whether the case is a jury or non-jury trial*.

**FDIC-R**: Trial is non-jury.  On or about January 13, 2009, the State Court granted BankFirst's Motion to Strike Jury Trial.  Trial is estimated to last 7-10 days.

**BBN**:  BBN concurs with the FDIC-R.

**SHP:**   Trial is estimated at 3 weeks.  The State Court's order striking jury trial was interlocutory and subject to review by this Court.  Indeed, SHP believes a jury trial right exists with regard to its RICO counterclaims and certainly those counterclaims against the Marshall Counter-Defendants.

> 7. *Any unique legal or factual aspects of the case requiring special consideration by the Court.*

**FDIC-R:**   The FDIC-R is entitled to asserted various common law and statutory defenses, including the federal common law *D'Oench Duhme* doctrine, which precludes a party from asserting claims or defenses against the FDIC based upon any "facts" outside the four corners of a recorded document in the bank's files, 12 U.S.C. § 1823(e), which provides a statutory analogue to the common law *D'Oench Duhme* doctrine, and 12 U.S.C. § 1823(d)(9), which similarly precludes claims or defenses based on unwritten agreements.

**BBN:**  As assignee of Note A, BBN contends that it is also entitled as a matter of law to assert the defenses available to the FDIC-R, including the *D'Oench, Duhme* doctrine and FHIDC defense to avoid some or all of SHP's affirmative defenses

**SHP:**   Even if it were the case that BBN and the FDIC were not subject to any Counterclaims or Affirmative Defenses, which SHP denies, the Marshall Counter-Defendants are

12

still the subject of the claims and defenses and have no basis to assert the *D'Oench, Duhme* doctrine in defense of these claims. Notwithstanding the *D'Oench, Duhme* doctrine, the FDIC-R and BBN are still subject to SHP's contract claims which undermine the basis for the foreclosure.

### 8. *Status of any potential settlement.*

BankFirst and SHP have twice mediated this matter without success prior to the FDIC-R's appointment as receiver for BankFirst. BBN and SHP have had discussions regarding a possible resolution and the parties will continue to negotiate in good faith.

### 9. *A statement as to whether the parties will elect to a Magistrate Judge for the following:*

The parties consent to proceed before a Magistrate Judge regarding Motions for Costs, Motions for Attorneys' Fees, and Motions for Sanctions. The parties do not elect to proceed before a Magistrate Judge regarding Motions to Dismiss, Motions for Summary Judgment and Trial.

### 10. *Such other matters as may aid the Court in the fair and expeditious administration and disposition of this action. In the event that motion(s) are pending before the Court at the time of the status conference, the parties shall be prepared to argue, at the Court's discretion, the merits of such motion(s).*

**FDIC-R:** On October 15, 2009, the FDIC-R moved for an enlargement of the previously-granted 90-day stay of this matter [D.E. 30] As set forth in the FDIC-R's Motion, 12 U.S.C. §§ 1821(d)(3)-(13) provides for a mandatory administrative procedure for the determination of claims against a failed financial institution, requiring any claimant to exhaust the administrative claims procedures set forth therein as a condition precedent to the pursuit of any claims against FDIC-R. Further, 12 U.S.C. § 1821(d)(13)(D) and applicable law deprives the Court of jurisdiction over claims for payments from or seeking a determination of rights with

respect to, the assets of a failed depository institution in the absence of strict compliance with and exhaustion of the statutorily mandated administrative claims process. As a consequence, the courts have commonly stayed actions brought against an insolvent bank before appointment of the FDIC as Receiver until the claimants have completed the administrative claims process.

**BBN:**  BBN has opposed the FDIC's motion for enlargement of the stay, arguing it should be allowed to pursue its claims to enforce Note A and the related loan documents since those claims are not subject to the administrative claims process. At a minimum, BBN should be allowed to litigate the defendants' liability under Note A and the related loan documents, subject to the Court's consideration of the defendants' affirmative defenses and counterclaims following the exhaustion of the administrative claims process.

**SHP and Werjuka:** SHP and Werjuka agree with the FDIC-R that pursuant to 12 U.S.C. §§ 1821(d)(3)-(13) this proceeding is stayed during the pendency of the administrative claims process. Because BBN is subject to certain Counterclaims and Affirmative Defenses there is no basis to bifurcate.

Respectfully submitted,

| | |
|---|---|
| By: *Alan R. Poppe*<br>    William E. Davis<br>    Fla. Bar No.: 191680<br>    Alan R. Poppe<br>    Fla. Bar No.: 0186872<br>    **FOLEY & LARDNER LLP**<br>    Attorneys for the FDIC-R<br>    and the Marshall Counter-Defendants<br>    One Biscayne Tower<br>    Two South Biscayne Blvd., Suite 1900<br>    Miami, Florida  33131-2150<br>    Telephone:  (305) 482-8400<br>    Facsimile:  (305) 482-8600 | By: *Ricardo A. Banciella*<br>    Atlee W. Wampler, III<br>    Fla. Bar No.: 311227<br>    Ricardo A. Banciella<br>    Fla. Bar No.: 599440<br>    **WAMPLER, BUCHANAN WALKER CHABROW BANCIELLA & STANLEY, PA**<br>    Attorneys for Beal Bank Nevada<br>    9350 South Dixie Highway, Suite 1500<br>    Miami, Florida 33156<br>    Telephone:  305.577.0044<br>    Facsimile:  305.577.8545 |
| By: *Jason S. Oletsky*<br>    Jason S. Oletsky<br>    Fla. Bar No.: 0009301<br>    **AKERMAN SENTERFITT**<br>    Attorneys for Savoy Hotel Partners, LLC<br>    Las Olas II, Suite 1600<br>    350 East Las Olas Boulevard<br>    Fort Lauderdale, Florida 33301<br>    Telephone:954.463.2700<br>    Facsimile: 954.463.2224 | By: *Stephen B. Gillman*<br>    Stephen B. Gillman<br>    Fla. Bar No.: 196734<br>    **SHUTTS & BOWEN, LLP**<br>    Attorneys for Abraham I. Werjuka<br>    1500 Miami Center<br>    201 South Biscayne Boulevard<br>    Miami, Florida 33131<br>    Telephone: 305.358.6300<br>    Facsimile: 305.347.7835 |
| By: *Jennifer Recine*<br>    Michael J. Bowe<br>    *Admitted pro hac vice*<br>    Jennifer S. Recine<br>    *Admitted pro hac vice*<br>    Kimberly A. Horn<br>    *Admitted pro hac vice*<br>    **KASOWITZ, BENSON, TORRES & FREIDMAN LLP**<br>    Attorneys for Savoy Hotel Partners, LLC<br>    1633 Broadway<br>    New York, New York 10019<br>    Telephone: 212.506.1700<br>    Facsimile: 212.506.1800 | |

AM_174321.1